**ILLINOIS DEPARTMENT OF REVE-
NUE, Plaintiff-Appellant,**

v.

**William PHILLIPS, Defendant-Appellee.**

No. 84–1495.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1985.

Decided Aug. 27, 1985.

Steven F. Molo, Neal B. Goodfriend, Chicago, Ill., for plaintiff-appellant.

Richard D. Trainor, Quinlivan & Trainor, Chicago, Ill., for defendant-appellee.

Before BAUER and COFFEY, Circuit Judges, and CAMPBELL, Senior District Judge *.

BAUER, Circuit Judge.

This case presents a question of first impression as to whether a state's Department of Revenue may file suit in federal court for treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, against a retailer who files fraudulent state sales tax returns. In this case the district court granted the retailer, defendant William Phillips', motion to dismiss the RICO complaint filed by the Illinois Department of Revenue based on nine separate acts of mail fraud in the filing of Illinois Retailers' Occupation Tax returns. We reverse and remand.

I.

Because this case is before us on appeal of a motion to dismiss, we look to the allegations in the complaint for the facts in the case. On November 23, 1983, the Department of Revenue filed a complaint against William Phillips, alleging jurisdiction under RICO. The complaint alleges

* The Honorable William J. Campbell, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

that the defendant operated a retail business known as True Car Wash and sold gasoline to the public at three locations in Chicago, Illinois, from July 1981 to March 1982. The plaintiff is empowered by Illinois law to administer and collect taxes pursuant to the Illinois Retailers' Occupation Tax Act, ILL.REV.STAT. ch. 120, § 440 *et seq*, the Municipal Retailers' Occupation Tax Act, ILL.REV.STAT. ch. 24, § 8–11–1, and the Regional Transportation Authority Act, ILL.REV.STAT. ch. 111⅔, § 704.03. As a retailer, defendant was required by Illinois law to file a monthly return stating his gross receipts from the sale of gasoline and the tax due, and to remit six percent of his gross receipts in payment of the retailers' and transportation taxes. The complaint alleges that for the months of July, 1981 through March, 1982 the defendant sent nine fraudulent sales tax returns to the Illinois Department of Revenue through the United States mails. The complaint alleges that the defendant knew that the sales tax returns fraudulently understated his gross receipts when he caused them to be mailed. As a result of these nine separate acts of mail fraud, the defendant had underreported sales of over $250,000 and underpaid his sales tax by $14,500.

The complaint alleges that the filing of the fraudulent sales tax returns in connection with the operation of True Car Wash and the use of the mails to transmit those returns to the state is a racketeering injury as defined in 18 U.S.C. § 1961. Because defendant associated with the True Car Wash, he therefore conducted its affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Alleging injury to its business or property in the amount of the underpaid tax, the Department of Revenue seeks treble damages pursuant to 18 U.S.C. § 1964(c).

## II

There is no doubt that the Illinois Department of Revenue's complaint against Phillips for the fraudulent reporting and underpayment of state sales taxes for the True Car Wash sufficiently alleges the elements of a cause of action under RICO. So the Department asserts and so the defendant admits. The district court concluded the same: "the complaint adequately sets forth the injury 'by reason of' the alleged RICO violations." App. A. We agree and, to illustrate the point, briefly review the elements of the cause of action and their application to this case.

Section 1962 of RICO is violated by any person associated with an enterprise, the activities of which affect commerce, who conducts the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(a)–(d). An "enterprise" includes "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Defendant's business, the True Car Wash, therefore qualifies as an enterprise under RICO.

■■■■ Mail fraud qualifies as a racketeering activity under the statute, 18 U.S.C. § 1961(1), and mailing fraudulent state sales tax returns qualifies as mail fraud. *United States v. Mirabile*, 503 F.2d 1065, 1066–67 (8th Cir.1974). *See also United States v. Flaxman*, 495 F.2d 344, 349 (7th Cir.1974). A "pattern" of racketeering activity, as required by section 1962(c), requires at least two acts of racketeering activity within a ten year period. 18 U.S.C. § 1961(5). Because the statute defines "racketeering activity" to include mail fraud, the defendant's mailing of nine fraudulent tax returns to the Illinois Department of Revenue over a nine month period constitutes a pattern of racketeering activity as defined in the statute. *United States v. Weatherspoon*, 581 F.2d 595, 602 (7th Cir.1978) (each mailing in a scheme to defraud is a separate offense so that several separate acts of mail fraud constitute a pattern of racketeering activity).

## III

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*,

provides a civil remedy for private parties injured by a RICO violation:

> Any person injured in his business or property by reason of a violation of section 1962 of this Chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c).

A RICO plaintiff must allege injury "to business or property." 18 U.S.C. § 1964(c). This court has held that the plain language of the statute dictates that the injury requirement be construed broadly. Limitations on the type of injury, such as requiring a "racketeering injury," have been rejected. *Haroco v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 387 (7th Cir.1984). This court has repeatedly upheld civil RICO claims where the "only apparent injuries were those directly resulting from the predicate offenses." *Id.* at 397. *See, e.g., Sutliff, Inc. v. Donovan Companies*, 727 F.2d 648, 653 (7th Cir. 1984); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1287–88 (7th Cir.1983). While the Supreme Court held that the "business and property" phrase in the Clayton Act refers only to commercial interests and competitive injuries, *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 264, 92 S.Ct. 885, 892, 31 L.Ed.2d 184 (1972), this is not the case under RICO, *see Schacht v. Brown*, 711 F.2d 1343, 1357 (7th Cir.1983) (citing cases), although a few courts have attempted to draw such a line. *See e.g., Van Schaik v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125 (D.Mass.1982). In this case, the Illinois Department of Revenue has been injured in its property to the extent that it has been defrauded out of $14,500 in unpaid taxes.

Section 1964 provides a cause of action for "any person" injured by a RICO violation. The Act defines a person as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). It is essentially on the question of the standing of the Illinois Department of Revenue to bring this civil RICO action that the district court dismissed this case. The district court reasoned that "RICO should not become a vehicle for federal jurisdiction and damages in state sales tax cases." App. A. The Act itself, however, makes no distinction between state governments, consumers, competitors, or other victims in determining who qualifies as a person under the Act, and so the Department argues that there should be none. The question before us therefore is one of first impression: under RICO may a state governmental unit use federal courts and take advantage of attractive federal remedies to enforce state laws? In other words, where the language of the statute and its legislative history do not seem to forbid it, can a state governmental unit be a proper plaintiff under civil RICO, particularly to collect state taxes?

The Department argues that under the analogy to the federal antitrust laws, states have standing to sue under RICO. The civil damages provision of RICO was modeled after Section 4 of the Clayton Act which provides an antitrust cause of action for "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. The Supreme Court has noted that the "clearest current" in the legislative history of the civil cause of action under RICO "is the reliance on the Clayton Act model." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, —— U.S. ——, 105 S.Ct. 3275, 3282 & n. 8, 87 L.Ed.2d 346 (1985). States long have been able to sue as a person under the Clayton Act for antitrust treble damages either in their proprietary capacity or as *parens patriae. Georgia v. Pennsylvania*, 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945). A state, however, has been held unauthorized to sue under the Clayton Act for damages for an injury to its general economy allegedly attributable to a violation of the antitrust laws. *See Hawaii v. Standard Oil Company of California*, 405 U.S. 251, 261, 92 S.Ct. 885, 890, 31 L.Ed.2d 184 (1972).

The plaintiff's antitrust analogy, however, is not entirely persuasive. As this circuit has noted previously, "the references to antitrust law and precedents [in the congressional debates on civil RICO] were attempts to justify the extraordinary treble damage action as a device to deter organized crime; the notion that the objectives of RICO and the Sherman Act were identical was discounted." *Schacht v. Brown,* 711 F.2d at 1358 (footnotes omitted). This distinction is not without reason, for as the court noted,

> to the extent that antitrust law and policy are increasingly concerned primarily with market efficiency rather than the deleterious effects of concentrated market power itself, analogies to that body of law become increasingly irrelevant, since the exercise of social power by organized crime is thought to be a *malum in se.*

*Id.* (footnotes omitted). Our reasoning in *Schacht* suggests therefore that the mere fact that states can sue under the antitrust laws does not necessarily mean that state governmental units ought to be able to sue under RICO to enforce state laws.

One comparison of antitrust law and RICO, however, does suggest that perhaps state governmental units are proper RICO plaintiffs. As this court has noted in *Schacht,* one reason that Congress enacted RICO rather than expanding the Sherman Act to battle organized crime is that the use of the antitrust laws would create "inappropriate and unnecessary obstacles in the way of persons injured by organized crime." *Schacht,* 711 F.2d at 1358. One of the obstacles under the antitrust laws would have been "setting strict requirements on questions such as standing to sue." *Id.* (citations omitted). This observation suggests that state governmental units might be proper plaintiffs under RICO, even when they would have no standing under the antitrust laws. The antitrust analogies therefore are insufficiently determinative to settle the question before us.

Three federal courts have entertained suits by state governmental units alleging RICO injuries and seeking treble damages. *See, e.g., Alcorn County, Mississippi v. Interstate Supplies,* 731 F.2d 1160 (5th Cir.1984); *County of Cook v. Lynch,* 560 F.Supp. 136 (N.D.Ill.1982); *State of Maryland v. Buzz Berg Wrecking Co.,* 496 F.Supp. 245 (D.Md.1980). In *Alcorn County,* the county sued to recover all amounts paid by it for supplies in violation of state billing laws alleging that a county employee's bribery by the defendant suppliers in order to falsify records as to the price of supplies purchased from it for the county constituted a RICO claim. The county had also sued under Mississippi law for a violation of public purchasing laws and for punitive damages under theories of fraud and conspiracy to embezzle. The case was tried before a jury, but the trial court disposed of all matters on cross motions for directed verdicts after all the evidence had been presented. The court ruled for the county on the state law claim and against the county on the punitive damage claim under state law. The court also ruled against the county on the RICO claim, adhering to the organized crime theory of RICO. The Fifth Circuit reversed and remanded the trial court's directed verdict against the county, holding that the RICO count must be sent to the jury. The Fifth Circuit rejected the organized crime theory of RICO and held that the county had shown an injury within the scope of RICO.

In *County of Cook,* a county brought a civil RICO suit against defendants who previously had been convicted under criminal RICO provisions for their conspiracy to obtain fraudulent real estate tax assessment reductions through bribery of the county's board of tax appeals. The district court granted the county a partial summary judgment on the collateral estoppel effect of defendants' 18 U.S.C. § 1962(d) convictions. 560 F.Supp. at 140.

In *State of Maryland,* the State of Maryland and the City of Baltimore filed a civil RICO complaint against the acting director of a division of the city's Department of Housing and Community Development,

alleging that the director had assisted in the rigging of competitive bidding for city demolition projects. The defendants filed a motion to dismiss based on the theory that the Department of Housing and Community Development cannot be an "enterprise" under RICO. The court, citing cases, denied the defendant's motion in a brief opinion. 496 F.Supp. at 248.

These three cases assume without discussion that a state governmental unit can be a proper plaintiff under RICO. Perhaps no discussion of this question exists because the standing of the governmental units was not challenged by the defendants in these cases. None of the three cases involve a state department of revenue's attempt to enforce state tax law; each involves an injury to the county as a commercial enterprise. Each also involves a more typical type of racketeering activity, in that bribery of county officials and the rigging of state bidding schemes appears to be closer to the kind of organized criminal activities Congress had in mind when RICO was drafted.

While it is tempting therefore to distinguish these cases from the instant case on these grounds, such a distinction directly contradicts our holding in *Schacht* that RICO injury need not be a "competitive injury." *Schacht*, 711 F.2d at 1345–58. In *Schacht* we reasoned that the "erection of a 'competitive' or 'indirect' injury barrier to RICO recovery comports with neither the plain language nor the central goal of the statute." *Id.* State governmental units can sue therefore under RICO for the type of "commercial injury" at issue in *Alcorn County, County of Cook, and State of Maryland.* They are not limited, however, to this type of injury. *See Sedima*, 105 S.Ct. at 3286 & n. 15; *Schacht*, 711 F.2d at 1356–58.

Similarly, an attempt to distinguish the instant case on the grounds that the state department seeks herein to enforce state laws in federal court is difficult in light of *Alcorn County.* In *Alcorn County* a governmental unit sued under RICO in the same suit in which they sought to enforce state public purchase laws. While the Illinois Department of Revenue's suit may appear to be a more unseemly manner of enforcing state laws, it is only by this appearance and not in substance that it differs from *Acorn County.*

In summary, then, the plaintiffs have made out a prima facie RICO case. The district court so held when it stated "the complaint adequately sets forth the injury 'by reason of' the alleged RICO violations, and the court rejects defendant's assertion that RICO is limited to defendants connected with organized crime." App. A. We agree with the district court's reasoning.

 The district court went on to dismiss the complaint, however, reasoning that "RICO should not become a vehicle for federal jurisdiction and treble damages in state sales tax fraud cases." *Id.* The Illinois Department of Revenue argues on appeal that the district court's order lacked a proper "understanding of the statute." App.Br. at 10. We think, in light of *American National Bank & Trust Co. of Chicago v. Haroço,* —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), and *Sedima, S.P. R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346, Supreme Court decisions not available to the district court, that we must agree, however reluctantly, with the Department of Revenue.

This circuit has been in the forefront of RICO interpretation since the statute's inception. We have insisted from our earliest cases that RICO be given the broad effect its plain language suggests. In *Schacht* we wrote:

> We agree that the civil sanctions provided under RICO are dramatic, and will have a vast impact upon the federal-state division of substantive responsibility for redressing illegal conduct, but, like most courts who have considered this issue, we believe that such dramatic consequences are necessary incidents of the deliberately broad swath Congress chose to cut in order to reach the evil it sought; we are therefore without authority to restrict the application of the statute.

*Schacht,* 711 F.2d at 1353 (citations omitted). *See also Sutliff,* 727 F.2d at 654.

In *Haroco,* a case involving the improper calculation of interest by a commercial bank, we added:

> Even if Congress did not anticipate all of the consequences of RICO, the breadth of the statute, including the civil provisions, was the result of deliberate policy choices on the part of Congress. In these circumstances, to impose special standing and injury requirements cannot in our view be defended as efforts to improve or polish a statute which was carelessly or inartfully drafted. RICO may be very broad, but there was nothing careless about its drafting. When Congress deliberately chooses to unleash such a broad statute on the nation, in the absence of constitutional prohibitions, complaints must be directed to Congress rather than to the courts. *See Schacht, supra,* 711 F.2d at 1356.

> With respect to the case before us, it does not seem at all likely that Congress anticipated the application of civil RICO to improperly calculated interest charges by a commercial bank. And this may or may not be an appropriate subject for this federal statute. Nevertheless, it does not seem fitting for us to attempt to narrow the statute in ways which are nearly impossible to rationalize merely to exclude subjects of this kind. For to say that Congress did not anticipate this subject is not to say that Congress would have excluded it if the subject had been brought explicitly to its attention. Congress appears to have preferred a broad statute, even if overinclusion might result.

*Haroco,* 747 F.2d at 399.

It was this very reasoning that the Supreme Court affirmed in *Haroco,* 105 S.Ct. at 3292, praised in *Sedima,* 105 S.Ct. at 3287, and echoed when it wrote "[w]e ... recognize that in its private civil version, RICO is evolving into something quite different from the original conception of its enactors." *Id.* The Supreme Court concluded as this circuit has in the past con-

cluded that "[it] is not for the judiciary to eliminate the private action in situations were Congress has provided it." *Id.*

Although we have doubts about the application of RICO to the facts of this case we cannot say that it does not come within the framework of the statute. Defendant Phillips admits the same and attempts to tease out of the legislative history the principle that RICO cannot apply to a state department of revenue's attempt to punish tax cheats. The history, however, is in fact silent on this point. Principles of comity might suggest that the federal courts are not the proper place to pursue state tax collection claims, but the Supreme Court and this circuit have emphasized that the importation of state claims into federal court is inherent in RICO's purpose. *Schacht,* 711 F.2d at 1353; *Sutliff,* 727 F.2d at 654; *Haroco,* 747 F.2d at 390 (*quoting United States v. Turkette,* 452 U.S. 576, 586–87, 101 S.Ct. 2524, 2530–31, 69 L.Ed.2d 246 (1981)).

Perhaps we can take solace in the fact that the Illinois Department of Revenue promised in oral argument that such tax collection cases will be few, but we doubt, once the cause of action is established, that this will be true. We can only hope that this decision appears to Congress as the distress flag that it is, and that Congress will act to limit, as only it is empowered to, the statute's application to cases such as the one before us now. In light of the Supreme Court precedent and the opinions of this circuit, however, and particularly at the pleading stage, we cannot in good conscience affirm the district court's dismissal of the Illinois Department of Revenue's civil RICO complaint. The order of the district court therefore is reversed and the case is remanded.

REVERSED AND REMANDED.