**STATE OF MICHIGAN, DEPARTMENT OF TREASURY, REVENUE DIVISION, Plaintiff**

v.

**Jerry FAWAZ, d/b/a West Seven Mile Service and Froggy's Fill-Up, Inc., Defendant.**

**Civ. No. 86CV70054DT.**

United States District Court, E.D. Michigan, S.D.

Aug. 27, 1986.

**142**

Ramon M. Alvarez, Detroit, Mich., for plaintiff.

Richard Zuckerman, Troy, Mich., for defendant.

### MEMORANDUM AND ORDER

DeMASCIO, District Judge.

The defendant operated two service stations in Detroit, Michigan, selling gasoline products retail to the general public. For calendar year 1982, defendant underreported his gross receipts and, correspondingly, underpaid his state sales tax liability by approximately $240,000. In August 1983, defendant was charged in a 12–count information in Recorder's Court with failure to pay the sales tax. He was tried, found guilty on all counts and placed on probation. As one of the conditions of probation, defendant was ordered to pay $295,000 in restitution to the State of Michigan.

On January 6, 1986, the State of Michigan Department of Treasury, Revenue Division (State of Michigan) instituted this action under the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961–68, against defendant doing business as West Seven Mile Service and Froggy's Fill-Up, Inc. The State of Michigan seeks treble damages under § 1964(c). Before the court is defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6).

18 U.S.C. § 1962(c) prohibits conducting or participating in the conduct of an enterprise "through a pattern of racketeering activity." *See also* 18 U.S.C. § 1961(1). Mail fraud, in the form of defendant's mailing of the fraudulent sales tax returns, indictable under 18 U.S.C. § 1341, is the predicate offense upon which this action is based. We must now determine whether the Revenue Division of a single department of the State of Michigan is a "person" with standing to pursue federal civil remedies under RICO, a question of first impression in this circuit.

The RICO statute itself contains no definition of "person." Section 1964(c) simply provides that:

Any person injured in his business or property by reason of a violation of section 1962 of this Chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The legislative history is similarly silent as to whether state tax collecting bodies have standing to bring a civil RICO action. The logical interpretation of such silence is that Congress never contemplated that states would attempt to puruse the statute's remedies in a sales tax collection context.

We recognize that the United States Supreme Court has broadly interpreted RICO in other respects. *See United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *American National Bank & Trust Co. of Chicago v. Haroco,*

473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). However, even the Court's statements that "in its private civil version, RICO is evolving into something quite different from the original conception of its enactors" and "it is not for the judiciary to eliminate the private action in situations where Congress has provided it," 105 S.Ct. at 3287, 3292, do not stretch so far as to encompass a sovereign's attempt to prosecute its own citizens in a federal forum for state sales tax violations.

The only reported decision to specifically address whether a state tax collecting agency is a person for purposes of § 1964(c) is *Illinois Dept. of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985). The Seventh Circuit reluctantly reversed the district court's holding that a state revenue department lacked standing to bring a civil RICO action against a sales tax violator. The district court has reasoned that "RICO should not become a vehicle for federal jurisdiction and damages in state sales tax cases." 771 F.2d at 314. The Seventh Circuit's distaste for what it perceived to be a mistaken, but mandatory holding, is obvious:

> Although we have doubts about the application of RICO to the facts of this case we cannot say that it does not come within the framework of the statute. Defendant Phillips admits the same and attempts to tease out of the legislative history the principle that RICO cannot apply to a state department of revenue's attempt to punish tax cheats. The history, however, is in fact silent on this point. Principles of comity might suggest that the federal courts are not the proper place to pursue state tax collection claims, but the Supreme Court and this circuit have emphasized that the importation of state claims into federal court is inherent in RICO's purpose.

\*      \*      \*      \*      \*      \*

We can only hope that this decision appears to Congress as the distress flag that it is, and that Congress will act to limit, as only it is empowered to do, the

statute's application to cases such as the one before us now.

*Id.* at 317. We decline to follow the Seventh Circuit's apprehensive holding. We hold that, for purposes of § 1964(c), the Revenue Division of the State Treasury Department is not a person having standing to bring a civil RICO action against a state sales tax violator. The judicial policy considerations of a contrary ruling are staggering. Federal courts would be barraged with state agencies' vindictive civil RICO actions against tax cheaters. The undesirability of this becomes even stronger in view of the fact that their own comprehensive state remedies and forums are available to sovereign state bodies in the pursuit of state sales tax matters.

There are deep-rooted public policy questions at stake here. A department of the State of Michigan is seeking to exact, through the federal RICO statute, a sanction not prescribed by state law—yet it seems to us that sanctions imposed upon tax violators are a matter of state public policy. The Michigan legislature could have easily enacted its own statute patterned after RICO to impose treble damages on state tax violators if it chose to do so. The fact that it has not, leads us to conclude that the Michigan legislature is content with the sanctions it has already provided. What makes this action extremely curious is the fact that in addition to obtaining a restitution order in the underlying criminal tax case, the department is now pursuing its remedies within the state tax collection system. When the department is successful, and it surely will be, it will have obtained a judgment for the amount of the tax owing, plus interest and penalties, which will equal the tax due and the treble damages provided for in RICO.

Our conclusion that the Revenue Division lacks standing is further reinforced by the particular facts of this case. The order of restitution issued against Fawaz by the state criminal court eliminates, or at least greatly diminishes, the State of Michigan's "injury to business or property" as required by § 1964(c). The State of Michigan responds that the remedy provisions of

RICO are exemplary and not compensatory in nature. This contention is inconsistent with the very purpose of RICO, to compensate victims of racketeering activity. The treble damage provision presupposes an underlying compensable injury to be trebled. *See* § 1964(c).

In light of the foregoing conclusions, we need not address the remaining issues raised in defendant's motion. Accordingly, defendant's motion to dismiss will be granted.

IT IS SO ORDERED.