**DYNABEST INC., Dynabest (Hong Kong) Ltd., and Dalvey Products Supply Ltd., Plaintiffs,**

v.

**Jeff YAO, Midas–Lin Co., Ltd., and Midas–Lin Chicago, Ltd., Defendants.**

No. 90 C 4401.

United States District Court, N.D. Illinois, E.D.

March 26, 1991.

Steven J. Cohen, Julia A. Fenton, Sachnoff & Weaver, Ltd., Chicago, Ill., for plaintiffs.

Robert S. Baizer, Joseph E. Kolar, Michael J. Pisani, Becker, Baizer & Rapoport, Highland Park, Ill., Jay D. Freiden, Schwartz, Freiden & Associates, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

In their amended complaint, plaintiffs Dynabest Inc., ("Dynabest"), Dynabest (Hong Kong) Ltd., ("Dynabest H.K."), and

Dalvey Products Supply Ltd., ("Dalvey") bring a host of state and federal claims against defendants Jeff Yao, Midas–Lin Co., Ltd., ("M–L"), and Midas–Lin Chicago, Ltd., ("Midas"). Defendants Yao and Midas move to dismiss Count VII which alleges common law fraud and Counts VIII–X which allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Plaintiff Dalvey has countered by moving to dismiss Yao's counterclaim alleging tortious interference with prospective economic advantage. For the reasons stated below, defendant Yao's and Midas' motion to dismiss is granted in part and denied in part. The court grants plaintiff Dalvey's motion to dismiss Yao's counterclaim.

## FACTS

Since this is a motion to dismiss, the court must accept all well-pleaded allegations as true. *Morgan v. Bank of Waukegan,* 804 F.2d 970, 973 (7th Cir.1986). Plaintiffs' complaint reads like the plot from a novel of corporate intrigue. Plaintiffs are related corporations engaged in the world-wide sale of consumer goods, e.g., fireplace tools, barbecue grills, and indoor/outdoor furniture. Dynabest is a Taiwan corporation with its principal place of business in Taipei, Taiwan. Dynabest exports these consumer goods. Dynabest H.K. is a Hong Kong corporation with its principal place of business in Hong Kong. Dynabest H.K. manufactures and exports these goods. Dalvey is a Taiwan corporation with its principal place of business in Taipei, Taiwan. Dalvey also manufactures and exports these types of consumer goods.

Defendant Yao is a permanent resident of Illinois and a citizen of Taiwan. Yao originally worked for TGC America Corporation of Illinois ("TGC"), a company related to Dalvey. TGC sold consumer goods in the United States, goods acquired from Dalvey. In April 1987, TGC faced financial difficulties. A corporate decision was made to incorporate a new company, Dynabest (U.S.A.), Inc. ("Dynabest U.S.A."), to serve as Dalvey's outlet in the United States. Dynabest U.S.A. was to be a sub-

sidiary of Dynabest H.K. At Yao's urging, Dynabest H.K. and Dalvey chose Yao to head the subsidiary. In September 1987, articles of incorporation for Dynabest U.S.A. were signed by Tom Mok, on behalf of Dynabest H.K., and sent to Yao for filing. Before filing, however, Yao crossed out Mok's signature and substituted his own. Dynabest was incorporated in Illinois, but, unbeknownst to Dynabest H.K., Yao became the sole incorporator. Yao then appropriated all shares of stock issued in Dynabest U.S.A.

Believing the subsidiary to be wholly owned by Dynabest H.K., plaintiffs entrusted the operation of Dynabest U.S.A. to Yao. Dalvey transferred TGC inventory and office equipment at a discount to Dynabest U.S.A. As a result of repeated requests by Yao, Dynabest H.K. and Dalvey made several capital contributions. Dynabest H.K. made seven separate capital contributions totalling $45,221.71. In addition, Dynabest H.K. provided Yao and Dynabest U.S.A. with $2500 in salary checks. Dalvey made one capital contribution of $22,625. Dalvey also contributed inventory worth $27,179.93 to Dynabest U.S.A. Plaintiffs allege that they never received full payment for the inventory nor have they recovered their capital contributions.

Yao represented to third parties that Dynabest U.S.A. was a subsidiary of Dynabest H.K. After time passed, Dynabest H.K. and Dalvey became suspicious when they failed to receive stock certificates for Dynabest U.S.A. In April, 1988, Dynabest informed Service Merchandise, a Dalvey customer, that Yao was no longer an agent of Dynabest U.S.A. Service Merchandise was asked to make payments for merchandise directly to BancBoston, which had been engaged as Dynabest's payment agent, instead of Dynabest U.S.A. On May 12, 1988, Yao sent a letter to BancBoston promising to reimburse BancBoston if payment were sent to Dynabest U.S.A. In reliance on that promise, Service Merchandise paid Dynabest U.S.A. $145,899. Dynabest, though, has never received payment.

On April 28, 1988, Dynabest H.K. and Dalvey ended Yao's agency relationship and demanded repayment of monies owed, along with the stock certificates for Dynabest U.S.A. In April, May or June of 1988, Yao approached M–L, a Taiwan corporation with its principal place of business in Taipei, Taiwan. Yao offered to provide Dynabest U.S.A.'s customers to M–L. M–L agreed and Yao established Midas, a company related to M–L. Midas was incorporated on June 8, 1988. Plaintiffs allege that, after incorporating Midas, Yao took inventory, equipment, employees and customers belonging to Dynabest U.S.A. for Midas' use.

Yao executed dissolution papers for Dynabest U.S.A. on October 31, 1988. The dissolution occurred without the knowledge or consent of either Dynabest H.K. or Dalvey.

Based on these facts, plaintiffs bring state and federal claims. In Count I, Dynabest outlines a breach of contract action against Yao. In Counts II and III, Dynabest H.K. alleges that Yao breached his fiduciary duty. It also claims, in Count IV, that Yao engaged in conversion. In Count V, all plaintiffs claim that Yao, M–L, and Midas intentionally interfered with prospective business relationships. In Count VI, Dynabest H.K. and Dalvey claim unjust enrichment and constructive trust against all defendants.

The remaining counts are the subject of defendants' motion to dismiss. Count VII charges Yao with common law fraud. Yao claims that this count should be dismissed for failure to plead with particularity. Both Yao and Midas ask that Counts VIII–X be dismissed. In these RICO counts, plaintiffs claim that defendants Yao, M–L and Midas engaged in a pattern of racketeering activity. The complaint alleges that they participated in schemes to defraud through use of the mails and/or wires. The mail and wire fraud claims are premised on misrepresentations regarding the incorporation of Dynabest U.S.A., the issuance of stock, the Service Merchandise–BancBoston transaction, the transfer of inventory, the payment of capital contributions, the incorporation of Midas, the payment for goods ordered from M–L, and the dissolution of Dynabest U.S.A. It is alleged that defendants used the income from this racketeering activity to acquire and maintain an interest in Dynabest U.S.A. and/or Midas. Additionally, it is claimed that they acquired and maintained an interest in Dynabest U.S.A. and/or Midas through a pattern of racketeering activity. It is also alleged that defendants conducted and participated in the affairs of Dynabest U.S.A. and/or Midas through a pattern of racketeering activity.

Yao has responded by submitting an amended counterclaim. His counterclaim alleges that plaintiff Dalvey intentionally interfered with Yao's prospective economic advantages. Plaintiff Dalvey has moved to dismiss Yao's counterclaim.

I. *Defendants' Motion to Dismiss Counts VII–X*

A. Count VII—Common Law Fraud

Defendants contend that the common law fraud count, Count VII, should be dismissed because it has not been pled with particularity. Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Courts have found this requirement satisfied where the plaintiff describes the "time, place and particular contents of the false representations, as well as the identity of the party making the representations, and what was obtained or given up thereby." *D & G Enterprises v. Continental Illinois Bank & Trust Co. of Chicago*, 574 F.Supp. 263, 267 (N.D.Ill.1983) (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982)). That requirement has been satisfied in this case. Count VII contains a long list of alleged misrepresentations. Each of the entries in this list is accompanied by a description specifying the approximate date the facsimile was sent, the recipient of the facsimile, and the contents of the facsimile. Although the places of transmission and receipt are not set out, it can be assumed that they are the principal places of business for both parties involved. Successive

paragraphs summarize the results obtained by virtue of these representations. As for the allegations based on information and belief that are discussed by defendants, these particular claims are not relevant to the fraudulent acts alleged in this count. Since all the required elements have been alleged, the court finds the pleading sufficient. Count VII stands.

## B. Counts VIII–X—RICO Violations

Turning to the remaining counts, plaintiffs assert three RICO claims based on violations of § 1962(a), (b), and (c).[1] In general, these provisions prohibit a person from engaging in a pattern of racketeering activity and associating with or gaining an interest in an enterprise which does business in interstate commerce. Defendants move to dismiss these claims on the ground that plaintiffs fail to allege a pattern of racketeering.

In order for a pattern of racketeering to exist, there must be at least two acts of racketeering activity, i.e., predicate acts. 18 U.S.C. § 1961(5). The predicate acts may consist of one or more of the many violations of federal and state law designated in 18 U.S.C. § 1961(1). These two predicate acts must be related and continuous. Relatedness encompasses "acts that have same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics that are not isolated events." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989) (quoting 18 U.S.C. § 3575(e)). Continuity has been described as both a "closed- and open-ended concept, referring either to a closed period of repeated conduct or to past conduct that

by its nature projects into the future with a threat of repetition.... [C]ontinuity over a closed period [may be proved by] a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months or acts threatening no future criminal conduct do not satisfy this requirement." *H.J., Inc.*, 109 S.Ct. at 2902.

■ Even with these guidelines, the definition of a pattern is by no means clear. In *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986), the Seventh Circuit set out factors to aid in determining whether a pattern exists. These factors include: (1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes, and (4) the occurrence of distinct injuries. *Morgan*, 804 F.2d at 975. In emphasizing that there are no clear cut rules in finding a pattern, the court noted that the "facts and circumstances of the particular case deserve consideration, with no one factor being necessarily determinative." *Morgan*, 804 F.2d at 976. *See also New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1478 (7th Cir.1990).

■ Applying this factually-oriented standard to the facts alleged in plaintiffs' complaint, we find the allegations sufficient to satisfy the pattern requirement. Defendants allegedly committed a number of predicate acts which spanned the course of a year. And, though there was but one scheme, there were three victims who suffered distinct injuries.

The predicate acts involved in this case are violations of the mail and wire fraud statutes.[2] Plaintiffs single out eleven mis-

---

**1.** Section 1964 of RICO enables a private plaintiff to bring a civil RICO action under § 1962.

**2.** Mail and wire fraud consist of basically the same elements. Both statutes involve the formation of a scheme to defraud and execution of that scheme through the mails or wires. Defendants Yao and Midas allege that the misrepresentations underlying the alleged schemes to defraud in this case are not plead with sufficient particularity. The court disagrees. Many of the misrepresentations plaintiffs rely on as the basis for their fraud allegations are the misrepresen-

tations set forth in Count VII. The court has found that the allegations of fraud in that count are sufficient. *See supra* at 6. The bulk of the remaining representations listed in Count VIII also satisfy the pleading requirements. They, too, contain specific time, place, receiver, and content allegations. The exceptions are those misrepresentations concerning the shipment of goods from M–L to Midas and payment from Dynabest U.S.A. to Midas. These acts have not been adequately plead, as the "use of mail or wire" element is merely plead on information

representations transmitted by mail or wire which form the bases of their mail and wire fraud claims. The sheer number of these misrepresentations is not determinative. However, the length of time over which they were committed is material. Plaintiffs' complaint alleges that the predicate acts spanned a period of sixteen months. The court puts the period at approximately twelve months—the length of time between the wrongful incorporation of Dynabest U.S.A. (September, 1987) and its subsequent dissolution (October, 1988).[3] This period of time may be considered substantial for purposes of a RICO pattern. Courts have found continuity in cases where the alleged schemes lasted for a far shorter period. *See, e.g., Liquid Air Corp. v. Rogers,* 834 F.2d 1297 (7th Cir.1987) (period of seven months), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); *Illinois Dep't of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985) (period of nine months).

Plaintiffs allege that these mail and wire fraud violations resulted in multiple injuries to a number of victims. Defendants argue that the three corporations are not multiple victims; rather, they should be treated as one victim since they are related companies. Defendants' argument, though, ignores the fact that each company is a separate legal entity. Each company was incorporated under the incorporation laws of its state or country of incorporation, each company has its own assets, and each is responsible for its own debts.

This argument also ignores the fact that each corporation was injured separately by acts of the defendants. *Cf. Elliot v. Chicago Motor Club Ins.,* 809 F.2d 347 (7th Cir.1986) (family members' claims not distinct because they arose from failure to settle same claim).

Additionally, defendants assert that any injury suffered by plaintiffs should be considered one injury. However, the alleged injuries do not fit neatly into one package —i.e., the wrongful taking of the company. Defendants' numerous misrepresentations seem to have inflicted various injuries on plaintiffs.

Dynabest H.K. appears to have suffered the brunt of defendants' activities. First, Dynabest H.K. was defrauded of ownership of Dynabest U.S.A. Yao misrepresented that he would incorporate Dynabest U.S.A. as a subsidiary of Dynabest H.K. Yao also allegedly made other representations regarding the issuance of stock and the forwarding of stock certificates. Besides loss of ownership, Dynabest H.K. incurred the loss of the company's assets. Although Yao represented that he would not appropriate assets of the company for his own benefit, he seems to have done just that in incorporating Midas and dissolving Dynabest U.S.A. It is plaintiffs' claim that Yao took the inventory and customers belonging to Dynabest U.S.A. for Midas' use. Further, Yao allegedly deprived Dynabest H.K. of profits it would have realized from

and belief. "[T]he general rule is that Rule 9(b) pleadings cannot be based on information and belief." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). The remaining misrepresentations, though, are more than adequate to satisfy the pattern requirement of two predicate acts. The RICO counts, therefore, will not be dismissed for failure to plead with particularity.

**3.** In claiming a sixteen-month period of racketeering, plaintiffs contend that Yao continued to operate Dynabest U.S.A. fraudulently after dissolution of the company. They point out that as late as 1989 Yao authorized Dynabest to pay shipping agents for goods delivered to Midas. In Illinois, however, the dissolution of a corporation terminates its existence. Ill.Rev.Stat. ch. 32, par. 12.30 (1989). A dissolved corporation cannot carry on business "except that necessary to wind up and liquidate its business and af-

fairs." *Id.* The goods Yao was paying for in 1989 had actually been delivered in August, 1988 when Dynabest was still a thriving concern. Therefore, Yao's payment for the goods was merely the winding up of the corporation's business and did not entail further operation of Dynabest U.S.A. The company ceased to exist in October, 1988. At that point, the scheme was completed and the predicate acts ended.

Nor can defendants claim that the scheme extended past the time of dissolution because Midas continued to use equipment and customer lists acquired from Dynabest U.S.A. The scheme was finished at the time the assets were appropriated. "When a thief steals $100, the law does not hold him to a new theft each time he spends one of those dollars." *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.,* 883 F.2d 48, 51 (7th Cir.1989).

its parent-subsidiary relationship with Dynabest U.S.A. According to the complaint, Yao misrepresented that such profits would be forthcoming.

In addition to these losses, Dynabest H.K. was allegedly duped into making numerous capital contributions to Dynabest U.S.A. At Yao's request, Dynabest H.K. sent seven capital contributions to Dynabest U.S.A. On July 22, 1987, Dynabest H.K. sent $5000. On September 1, 1987, Dynabest H.K. gave $4366.59. Four additional contributions were made in September—$15,173.77, $5339.31, $9953.07, and $555.97. The last contribution, equalling $4833, was made in October. Each of these capital contributions, solicited by Yao and provided by Dynabest H.K., constitutes a distinct injury.

Dalvey also claims its share of injuries. Dalvey, too, gave Yao and Dynabest U.S.A. a capital contribution based on a request from Yao. The capital contribution was in the amount of $22,625. Additionally, Dalvey provided much of the inventory for Dynabest U.S.A. Dynabest U.S.A. was given $149,742.63 in start up inventory and $27,179.93 in kitchen inventory. To date, Dalvey has only received $42,179.54 in payment. It is claimed that the remaining equipment and inventory have been absorbed by Midas.

Dynabest is the third victim. It is alleged that Dynabest lost $145,899 when Yao intercepted a payment due Dynabest from Service Merchandise. Service Merchandise was asked to make payment for goods to a factoring agent who would pass payment to Dynabest. Yao stepped in, represented that he would ensure payment to Dynabest, and received payment. Dynabest has yet to recover the money it is owed.

Contrary to defendants' claims, each of the alleged predicate acts carried independent significance and caused a distinct injury. Each of the misrepresentations soliciting capital contributions triggered a separate result. Every time Yao solicited a contribution from Dynabest H.K., a sum of money was paid. These repeated payments of capital contributions, on their own, are sufficient to establish a pattern. In *Liquid Air Corp.*, the Seventh Circuit held that the "repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering activity for purposes of civil RICO." *Liquid Air Corp.*, 834 F.2d at 1305. *See also Illinois Dep't of Revenue*, 771 F.2d at 312 (nine fraudulent tax returns mailed to Illinois Department of Revenue over nine month period constitutes a pattern of racketeering). This case, though, goes even further than *Liquid Air Corp.* as it involves multiple victims. Both Dynabest H.K. and Dalvey allegedly provided capital contributions. This case also involves other types of injuries. Dynabest H.K. lost ownership of its supposed subsidiary, the subsidiary's assets and its profits. Dalvey lost payment for contributed inventory. Dynabest lost a customer's payment for goods. All of these examples lead to the conclusion that more than one episode of fraud occurred causing more than a single injury.

As for the existence of separate schemes, the importance of this factor has been greatly diminished since the Court's decision in *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In *H.J., Inc.*, the Supreme Court found that multiple schemes are not necessary to the existence of a pattern. Instead, the Court decided to adopt a "flexible approach". *H.J., Inc.*, 109 S.Ct. at 2900. The Court noted that Congress "envision[ed] a concept of sufficient breadth that [the pattern element] might encompass multiple predicates within a single scheme that were related and amounted to, or threatened the likelihood of continued criminal activity." *H.J., Inc.*, 109 S.Ct. at 2899.

The facts in this case applied to the factors enumerated in *Morgan* suggest the existence of a pattern. An examination of the predicate acts themselves shows that there has been a closed period of repeated conduct. Relatedness is evidenced by the similarity of acts, consistency of purpose, and relationship of the parties. Continuity can be found in the multitude of acts, the

number of victims and the distinct injuries occurring over a year's time. An examination of the scheme as a whole shows that defendants were engaged in more than a one-time activity. They were in the business of stealing plaintiffs' money and resources. In fact, it may be said that making misrepresentations with the intent to defraud was Yao's regular way of conducting Dynabest U.S.A.'s business. Yao gave customers false information about Dynabest U.S.A.'s ownership. And, Yao gave false information to his suppliers—plaintiffs—about the company's ownership, the company's assets and the disposition of the company's profits. Both approaches justify the conclusion that a pattern of racketeering existed.

Plaintiffs allege that defendants put this racketeering to use to violate § 1962(a), (b), (c) of RICO. In Count VIII, plaintiffs allege a violation of § 1962(a). They claim that defendants used or invested income derived from a pattern of racketeering in the acquisition of any interest in, the establishment of, or the operation of any enterprise engaged in interstate commerce. In order to bring a claim under this section, plaintiffs must allege that their injury was proximately caused by defendants' use or investment of income allegedly derived from racketeering activities. *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods Inc.*, 720 F.Supp. 714, 717 (N.D.Ill.1989). Plaintiffs allege numerous injuries which can be traced to the use or investment of income derived from the discussed racketeering activities. All defendants are named as being liable for plaintiffs' injuries. Yao is the subject of direct liability claims. The complaint sets out numerous misrepresentation allegedly made by Yao which enabled him to accumulate income. From plaintiffs' allegations, it seems as if the use of that income in Dynabest U.S.A. perpetuated the fraud against plaintiffs. Its subsequent investment in Midas would have then completed the injury wrought on plaintiffs. With regard to Midas, plaintiffs make no allegations of direct liability. Therefore, they must seek to hold Midas indirectly liable for Yao's actions. It can be claimed that Yao, as

president of Midas, acted as its agent. Certainly, it appears that Yao's acquisition of income from racketeering activities was ultimately of benefit to Midas. According to the allegations, Midas received the bulk of the inventory, equipment and customers taken from plaintiffs. And, as alleged, it does not appear that Midas used the benefits unwittingly. From the connection Yao allegedly attempted to foster between Dynabest U.S.A. and Midas, Midas could not have been in the dark about the source of these resources. The Seventh Circuit has found that the doctrine of vicarious liability or respondent superior is "entirely appropriate" under § 1962(a) so long as the principal/employer benefitted from the RICO violation. *Liquid Air Corp.*, 834 F.2d at 1307; *Haroco v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 402 (7th Cir.1984) (corporation may be liable under § 1962(a) if direct or indirect beneficiary of pattern or racketeering activity), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Since the court can conclude that Midas knowingly benefitted from Yao's actions, a violation of § 1962(a) can be alleged against Midas as well as Yao.

In Count IX, plaintiffs allege a violation of § 1962(b). Subsection (b) prohibits a person from acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity. The thrust of plaintiffs' complaint is that Yao acquired an interest in both Dynabest U.S.A. and Midas through misrepresentations. It is more difficult to find allegations supporting liability for Midas. Again, the question is whether Midas can be held indirectly liable, since no allegations of direct liability have been made against Midas. In *Liquid Air Corp.*, the Seventh Circuit stated that vicarious liability is also appropriate for § 1962(b) as long as the principal/employer gains some benefit from the RICO violation. *Liquid Air Corp.*, 834 F.2d at 1307; *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964 (7th Cir.) (respondeat-superior is inconsistent with the language of § 1962(c)), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). From

plaintiffs' claims, it is possible to find that Midas gained a benefit in Dynabest U.S.A. as a result of Yao's actions. Midas allegedly gained Dynabest U.S.A.'s inventory, capital, employees and customers because of Yao's activities. As for an interest in Midas itself, the company was established because of Yao's actions. This claim, then, can be brought against both Yao and Midas.

■ Lastly, in Count X, plaintiffs allege a violation of the third subsection of § 1962. Subsection (c) prohibits a person employed by an enterprise from conducting the enterprise's activities through a pattern of racketeering. Under subsection (c), plaintiffs need only allege that they were injured by reason of one of the racketeering acts. Here, plaintiffs claim a host of injuries stemming from the acts perpetrated against them. Yao is the target of direct allegations that he conducted the affairs of both Dynabest U.S.A. and Midas through a pattern of racketeering. On the other hand, direct allegations are not levelled at Midas. And, under this subsection, Midas cannot be held vicariously liable for Yao's actions. "[T]he express language of subsection (c) has been read to proscribe vicarious liability." *Liquid Air Corp.*, 834 F.2d at 1306. Therefore, Count X will remain against Yao, but will be dismissed as to Midas.

II. *Counterclaim—Tortious Interference with Prospective Economic Advantage*

■ Defendant Yao has counterclaimed solely against plaintiff Dalvey alleging tortious interference with prospective economic advantage. The court agrees with Dalvey's conclusion that Illinois law governs this case.[4] Under Illinois law, the tort of intentional interference with prospective economic advantage has the following elements: "(1) Plaintiff has a reasonable expectancy of entering into a valid business relationship; (2) Defendant knows of plaintiff's expectancy; (3) Defendant intentionally interferes in plaintiff's expectancy, preventing it from ripening into a valid business relationship; (4) Plaintiff suffers damages from defendant's interference." *Kemmerer v. John D. & Catherine T. MacArthur Foundation*, 594 F.Supp. 121, 122 (N.D.Ill.1984). Dalvey challenges Yao's counterclaim by questioning the sufficiency of all these elements. The court finds itself in agreement with Dalvey with respect to two elements: Yao has not identified any expectancy of a valid business relationship which failed to ripen because of plaintiff's alleged actions; nor has Yao alleged a factual basis for the damages he claims. Accordingly, the counterclaim is dismissed.

Yao's counterclaim alleges that Dalvey transmitted two reputation-tarnishing facsimiles to retail customers and vendors with whom Yao did business. These facsimiles allegedly interfered with Yao's expectation of business relationships with individuals or companies in this group. Yao states in a conclusory fashion that these individuals or companies could include "without limitation, Sears, Service Merchandise Company and Best Products Com-

---

4. The court must apply the choice of law rule of the state in which it sits. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "Illinois conflict of law principles for torts require the use of the most significant contacts rule." *Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1112 (7th Cir.1987). "The contacts which may be considered in determining the state with the most significant contacts include: (1) the place where the injury occurred; (2) the place where the conduct occurred; (3) the domicile, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship of the parties is centered." *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593, 596 (1970). An examination of the contacts in this case indicates that Illinois is the state with the most significant contacts. Plaintiffs are Taiwan and Hong Kong corporations. Defendant Yao is a permanent resident of Illinois. He uses Illinois as his base for selling consumer goods. He has worked for Illinois corporations in the past and presently is the president of an Illinois corporation. The claimed injury in this case is the dispatch of facsimile communications from Taiwan to retail customers and vendors in the United States, presumably to some individuals or corporations located in Illinois. Any injury stemming from interference with Yao's business relations, then, would most likely be centered in Illinois. A balancing of these contacts supports the application of Illinois law.

pany." Amended Counterclaim at 3–4. This assertion does convey an expectancy of a valid business relationship. Unfortunately, Yao does not take the necessary step of identifying any individuals or companies who refused to do business with him on the basis of the transmitted facsimiles. Yao merely claims that his "standing, reputation, prestige, good will and business was greatly damaged and shall in the future be damaged." Amended Complaint at 4. His allegation is the equivalent of the statement that he "may" not be able to capitalize on a prospective economic advantage—a statement which has been found to be insufficient to state a tortious interference with prospective economic advantage claim. *See Paul v. Premier Electrical Construction Co.*, 581 F.Supp. 721, 725 (N.D.Ill. 1984). Without any concrete claims that a reasonable expectation of doing business with any particular individual or company has been defeated, Yao has not satisfied the elements of the intentional interference tort. *Roiter v. SNE Corp.*, No. 85–3453, slip op. at 2, 1987 WL 4945 (N.D.Ill. May 8, 1987); *Delcon Group v. Northern Trust Corp.*, 187 Ill.App.3d 635, 135 Ill.Dec. 212, 224, 543 N.E.2d 595, 607 (1989) (claim of intentional interference with prospective economic advantage insufficient if evidence did not establish that defendants' letters did not prevent any "expectancy of plaintiffs' from ripening into a valid business relationship or that they caused any damage to plaintiffs"). Additionally, his claim for damages in the amount of $500,000 is not substantiated by any factual allegations explaining the cause or extent of any injuries. While the federal rules give latitude in pleading, the rules do not allow for this degree of generality. Therefore, Yao's counterclaim is dismissed.

## CONCLUSION

Defendants seek to dismiss Counts VII–X. The court finds that Count VII has been pled with sufficient particularity and should stand. The court further finds that Counts VIII–IX adequately plead RICO vi-

olations against both Yao and Midas. With regard to Count X, the court finds that it has been sufficiently pled against Yao, but not Midas. Count X, therefore, will be dismissed as to Midas.[5] Additionally, Dalvey seeks to have Yao's counterclaim dismissed. The court finds that the counterclaim has not been adequately pled. Accordingly, the counterclaim is dismissed.

IT IS SO ORDERED.

---

**5.** RICO allegations have been made against all defendants, including M–L. To date, M–L has not moved to dismiss the RICO claims against it.

Counts VII–X, therefore, also remain with respect to M–L.